Judge Marshall
delivered the opinion of the Court.
The act of 1799, establishing the boundary line between Virginia and this Commonwealth, (Statute Law, 266,) shows that there had been doubts among locators of land, as to which of the main forks of Big Sandy river constituted the true boundary, and that lands within this disputed or doubted territory had been entered under the authority of each State. The boundary, as fixed by commissioners from the two States, left within one or within each, lands which had been entered in the offices of the other, and it was made a condition of the agreement fixing the boundary, that these entries should be as valid as if made in the State in which the land lies, and that until mutual acts should be passed by the two States ratifying said claims, the agreement should not take effect. The act above referred to, after reciting the agreement at large, adopts the boundary therein fixed, and enacts that entries made in the offices of Virginia previous to the first day of October, 1799, for lands between the forks of Sandy, and which, by the line adopted, fall within the limits of this State, shall be as good and valid as if made in the proper offices in this Commonwealth. In June, 1800, a patent was issued by the State of Virginia to one Wolcott, for several hundred thousand acres of land between the forks of Sandy, referred to in the act of 1799, but founded upon a survey made in 1795, and of ,ourse upon a previous entry. And Salmons, the de-endant in this action of ejectment, brought upon two small patents issued by Kentucky upon Kentucky land warrants since the year 1800, having read in evidence *366 the older patent of Wolcott to protect his possession, and the Court having afterwards excluded that patent from the jury, the principal question now presented is, whether this Virginia patent for lands within the limits of Kentucky, conferred any title, or is entitled to any effect in this action?
Patents issued by the Slate of Virginia, for land lying in the forks of Sandy river, subsequent to the first of October, 1*799, confered no title, though the entry had been made be-ioie that date.
This question depends entirely upon the agreement recited in the act of 1799, and upon the terms of the act itself. The agreement, which we have not quoted entire, uses sometimes the word ‘claims’ and sometimes the word ‘entries,’ but it seems to narrow down the extent of the word ‘claims’ by the final clause, introduced obviously for the purpose of definite explanation, and commencing with these words: “ that is to say, that all entries of land made in the offices of either State,” &c. And the enactment made in pursuance of the agreement, adopts and is based upon this construction, since it only provides “ that all entries for land made in the offices of Virginia,” &c., “shall be as good and valid as if they had been made in the proper offices in this Commonwealth.” The most liberal construction of the agreement and the statute cannot make them go further than to recognize and confirm the Virginia claims within the debateable territory, in the condition in which they actually were on the first day of Oct. 1899,by making them as validas if the acts on which they were founded had been done under the authority and in the proper offices of this State. But even this construction, the propriety of which is not now in question, if it might give validity to patents issued by Virginia before the settlement of the boundary, neither recognizes nor confers any authority for the subsequent issuing of patents by that State for lands within the limits of Kentucky as then fixed. On the contrary, by failing to provide that Virginia might go on to consummate the titles commenced under her authorithy, and by giving to such titles, or claims, or entries, the same validity as if made in the proper offices in Kentucky, the agreement and the statute would seem to refer the *367 consummation of such of these titles as were in an imperfect condition to the latter State, in which, by the ascertainment of the boundary, the undisputed- title and sovereignty of the soil, and the absolute right of disposition, except so far as qualified or renounced by herself, was admitted to abide.
By recognizing and declaring the validity of entries (or other claims) under the authority of Virginia as if made in the proper offices in this Commonwealth, Kentucky bound herself to consummate them as if made in the proper offices here, leaving to the claimants and to the State of Virginia, to devise and pursue the means for bringing the evidences of such claims into the proper offices here and placing them in a condition to be consummated according to her own laws. This being in our opinion the full extent of her obligations and concessions, it follows that after the boundary was fixed she alone possessed and could grant the title to the lands within her territory previously disputed. In stating her right in this qualified manner, which is all that is necessary for the present case, we intimate no opinion as to the validity or effect of patents for land within the disputed territory, issued by Virginia before the first day of October, 1199, which, as already said, is not now in question. The act of 1799, above referred to, was, by its own terms, to go into effect when Virginia should, in conformity with the agreement of the commissioners, pass a similar law, of which there is no direct evidence. But the boundary referred to in the act, has been from that time recognized without dispute, and must be taken as being in fact and in law the true boundary of the State. And as the rights of Kentucky, within her own territorial limits, would be at least as great, independently of the act of 1799, as they are under the terms of that act, it is immaterial, so far as concents the present case, whether that act ever took effect or not. It is only by her concession that any appropriation of her land by another State can be entitled to the slightest respect. And if it be *368 admitted, that under the relations which had existed between Virginia and Kentucky, and in view of the uncertainty as to the true boundary between them, some concession of territorial rights should be made, it cannot be admitted that more was due from Kentucky than is made in the agreement and statute referred to. In every view therefore, we are of opinion that the patent to Wolcott conferred no title to any land within the limits of Kentucky, and was, therefore, properly excluded from the jury. We have no reason to doubt, however, that Virginia passed the requisite act adopting the boundary and the terms of the agreement.
Where'the jury-have decided a fact in issue, de-pendiug upon the opinions of witnesses, their decision is not do be distuibed by the Court.
A verdict in «jectment, “that ¡he defendant is guilty of the tres pass in the declaration mentioned, and that the plaintiff recover the term yet lo come in the declaration mentioned, and one cent in damages,” though informal is sufficient.
*368 The defendant also exhibited and relied on a patent from this Commonwealth to one Taylor older than either of the plaintiff’s patents, and it is contended that the Court should have granted a new trial on the .'ground.alleged, that the verdict finding in effect that the patent to Taylor did not cover the land in dispute, was in this respect contrary to the evidence, or at least to the weight of the evidence. But the evidence rested ■merely in the opinion or judgment of witnesses whether a line pursuing a certain course from a designated point several miles distant from the land in contest, would reach or include it. None of the witnesses had traced the line either with or without a compass, and they-differed in opinion as to the matter in question. Although the witness who supposed the line would include the land in contest was a surveyor, and the two who thought differently were not surveyors and may have been unacquainted with the use of the compass, still they were well acquainted with the region of country and the referred to. And the jury having under their right of weighing the testimony found a verdict which the presiding judge refused to set aside, it cannot •according to the practice of this Court, be disturbed on the ground that it is against the weight of the evlndece.
The jury by their verdict “find the defendant guilty of the trespass in the declaration mentioned, and that *369 the plaintiff recover the term yet to come in the declaration mentioned, and one cent in damages.” And it is contended that this verdict did not authorize a judgment for any thing more than one cent in damages and the costs. But the verdict though informal, shows plainly enough that the jury found the defendant guilty of the trespass and ejectment in the declaration mentioned. If this were, not sufficiently indicated by other parts of the verdict, it is clearly and sufficiently implied in the finding that “the plaintiff recover the term, &c.” And indeed there is no dispute as to the fact fully proved, that the defendant was in possession of the land in contest at the commencement of the action. But wiihout resorting to the evidence, we think tho verdict substantially sufficient.
Apperson for plaintiff.
Wherefore the judgment is affirmed,